IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL ESCAMILLA, *Plaintiff,* | § § § | SA-19-CV-01103-FB |
| vs. | § § | |
| C.R. BARD INC., BARD PERIPHERAL VASCULAR INCORPORATED, *Defendants.* | § § § § § | |

**ORDER**

Before the Court in the above-styled cause of action are Defendants' Motion to Strike Expert Designation of John F. LaDisa, Jr., Ph.D. [#44] and Defendants' Renewed Motion to Strike the Generic Opinions of David C. Feldstein, M.D.'s Report and Testimony [#45]. This case has been referred to the undersigned for all pretrial proceedings. The undersigned has authority to issue this Order pursuant to 28 U.S.C. § 636(b)(1)(A).

The Court held a hearing on the motions on August 20, 2021, at which all parties appeared through counsel. In issuing this Order, the Court has considered the parties' written filings, which include Plaintiffs' responses [#48, #49], and Defendants' replies [#50, #51], as well as the arguments of the parties at the hearing. For the reasons that follow, the Court will grant Defendants' motion as to Dr. LaDisa and grant in part Defendants' motion as to Dr. Feldstein.

**I. Background**

This is a products liability and personal injury action regarding a medical device known as an inferior vena cava ("IVC") filter. Defendants C.R. Bard, Inc. and Bard Peripheral Vascular Incorporated (collectively "Bard") manufacture such medical devices. The IVC is a large vein

that returns blood to the heart from the lower body. (Transfer Order [#3], at 6.) An IVC filter is a small device implanted in the IVC to catch blood clots before they reach the heart and lungs. (*Id.*)

Plaintiff Michael Escamilla is one of thousands of plaintiffs who received implants of Bard IVC filters and claim they are defective and have caused serious injury or death. These cases were consolidated in a multidistrict litigation proceeding ("MDL") in the District of Arizona. The MDL involved multiple versions of Bard's IVC filters—the Recovery, G2, G2X, Eclipse, Meridian, and Denali. (*Id.*) Plaintiff's case concerns the "Meridian Vena Cava Filter." (Compl. [#1], at 2.) All of these filters are umbrella-shaped devices that have multiple limbs fanning out from a cone-shaped head. (Transfer Order [#3], at 6.) The limbs consist of legs with hooks that attach to the IVC wall and curved arms to catch or break up blood clots. (*Id.*) Each of these filters is a variation of its predecessor. (*Id.*) In this lawsuit, Plaintiff alleges that the filter caused him to develop pulmonary emboli and deep vein thrombosis (i.e., blood clots) in his left femoral vein. (Summ. J. Mot. [#28], at 9.)

The MDL plaintiffs all allege that Bard filters are more dangerous than other IVC filters because they have higher risks of tilting, perforating the IVC, or fracturing and migrating to vital organs. (Compl. [#1], at 7.) Plaintiffs further allege that Bard failed to warn patients and physicians about these higher risks. (*Id.*) The MDL was formed to "centralize all pretrial proceedings and complete all common fact and expert discovery concerning Bard IVC filters." (*Id.* at 9.)

Prior to the establishment of the MDL, plaintiffs' counsel had conducted substantial common discovery against Bard concerning all aspects of Bard IVC filters, including the design, testing, manufacturing, marketing, labeling, and post-market surveillance of these devices. (*Id.*

at 9.) Bard produced numerous documents and ESI and responded to thousands of written discovery requests, and more than 80 corporate witness depositions were taken. (*Id.*) This pre-MDL general fact discovery was made available by Bard to all plaintiffs in the MDL. (*Id.*) During the MDL, further discovery was conducted in a group of 48 cases selected for consideration in the bellwether trial process, and six plaintiffs were ultimately selected for bellwether trials. (*Id.* at 11, 15.)

The parties designated general experts in all MDL cases and case-specific experts in individual bellwether cases. (*Id.* at 13.) General expert discovery closed July 14, 2017. (*Id.*) The MDL court determined that all other case-specific expert discovery should await remand or transfer. (*Id.*) The MDL court also issued numerous orders on the parties' *Daubert* motions, some of which are implicated in the motions currently before the Court. (*Id.* at 20–21.)

After all fact discovery had been completed, Plaintiff's case was transferred to this Court from the MDL on August 20, 2019. The Transfer Order states that, "[b]ecause all general fact and expert discovery has been completed in this MDL, the courts receiving these cases need not be concerned with facilitating general expert, corporate, or third-party discovery." (*Id.* at 31–32.) The parties' Joint Rule 26 Report filed in this case indicates that they agree to be bound by specific orders from the MDL and that "case-specific discovery is necessary in this action." (Rule 26 Report [#16], at 2–3.) Although some case-specific discovery was conducted before or during the time this case was part of the MDL, the parties agree "it was minimal and limited to the submission of basic plaintiff and defense profile forms." (*Id.* at 3.) The parties therefore agreed that "they will need to accomplish *all* case-specific discovery, including . . . the retention and deposition of case-specific experts." (*Id.*)

Following transfer, this Court entered a Scheduling Order to govern this case. The Scheduling Order imposed a deadline of October 1, 2020, for Plaintiff to designate testifying experts and a deadline of November 1, 2020, for Bard to designate its testifying experts. (Sched. Order [#20], at 1–2.) Plaintiff timely designated his experts, which included Dr. David C. Feldstein, as a case-specific expert. (Pl. Desig. [#30-1], at 16–17.) The designation included Dr. Feldstein's CV, prior testimony list, and expert report. (Feldstein Report [#31-2].)

On March 15, 2021, Bard filed a motion for summary judgment as to all of Plaintiff's live claims, which remains pending. (Summ. J. Mot. [#28].) On that same day, Bard also filed a motion to strike the opinions of Dr. Feldstein, arguing that he had improperly parroted the report of Dr. John LaDisa, which was submitted in another Bard suit involving a plaintiff named Melvin Lampton, Jr., who had also suffered from deep vein thrombosis like Plaintiff (hereinafter "the Lampton Report"). (LaDisa Report [#48-1].) Dr. LaDisa was retained in the *Lampton* case to offer expert analysis regarding the standards, designs, physiologic conditions and computational testing applicable to the retrievable line of IVC filter designs, including the Meridian IVC filter. Dr. LaDisa was not designated as an expert by Plaintiff in this case or in the MDL.

The Court set the motion to strike for a hearing, but before the hearing, the parties resolved their dispute and filed a joint stipulation reflecting their agreement. (Stip. [#43].) The stipulation provided that Plaintiff will only offer one expert to testify on the topics and opinions that are addressed in the expert reports of Dr. David Feldstein and Dr. Darren Hurst, one of the experts designated by the plaintiffs in the MDL. The parties further agreed that, to the extent opinions offered by Dr. Hurst were excluded by the Court in the MDL, those rulings should apply to both Dr. Hurst and Dr. Feldstein, and Dr. Feldstein should also be precluded from

offering the same opinions in this case. Finally, Plaintiff agreed to disclose Dr. John LaDisa as an expert witness no later than May 24, 2021, and to make him available for deposition no later than July 9, 2021. Bard reserved all objections to Dr. LaDisa's disclosure, including objections under Federal Rule of Evidence 702 and *Daubert*. The Court canceled the hearing and dismissed the motion but ordered that the motion could be refiled if the stipulation could not be finalized.

Plaintiff failed to designate Dr. LaDisa by the agreed May 24 deadline, instead disclosing him on June 9, 2021, several weeks later. In his disclosure, Plaintiff indicated that Dr. LaDisa was an expert "previously disclosed in other litigation." (Pl. Supp. Disclosure [#44-2], at 9.) Plaintiff did not provide an expert report by Dr. LaDisa unique to Plaintiff's case and instead simply directed Bard to the Lampton Report "provided to counsel for Defendants on November 2, 2020." (*Id.* at 9.)

On June 15, 2021, Bard filed the two motions to strike that are the subject of this Order, asking the Court to strike Dr. LaDisa's untimely expert designation and renewing its previous motion to strike as to Dr. Feldstein. The Court addresses each of the motions in turn.

## II. Defendants' Motion to Strike Dr. LaDisa [#44]

Bard asks the Court to strike Dr. LaDisa's expert designation pursuant to Rule 26 and 37 on the basis that Dr. LaDisa was not timely disclosed pursuant to the parties' joint stipulation and was not accompanied by the disclosure materials required under Rule 26. Bard also argues that Dr. LaDisa's expert report contains general, non-case-specific opinions that were not disclosed in the MDL during the general expert discovery period and are therefore not permitted at this stage of the litigation. The Court will grant Bard's motion and strike Plaintiff's expert designation of Dr. LaDisa due to his untimely disclosure and the failure of Dr. LaDisa to provide an expert report specific to Plaintiff's case that complies with the Federal Rules of Civil Procedure.

Rule 26 of the Federal Rules of Civil Procedure requires that, "if the witness is one retained or specifically employed to provide expert testimony in the case," the expert must provide a written report prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). This report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* Rule 37 provides a remedy for the failure to disclose an expert witness in accordance with deadlines imposed by the Court and Rule 26's disclosure requirements. The rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

"The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information." *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 344 (W.D. Tex. 2020) (internal quotation and citation omitted). Once that burden is satisfied, Rule 37(c)(1) implicitly places the burden "on the party facing sanctions to prove harmlessness" or substantial justification. *Id.* (internal quotation and citation omitted). To evaluate substantial justification and harmlessness, courts examine the following factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3)

the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989).

It is undisputed that Plaintiff failed to designate Dr. LaDisa by the agreed-upon deadline of the parties. It is also undisputed that Plaintiff did not provide Bard with an expert report authored by Dr. LaDisa for this case. Plaintiff conceded at the hearing that his failure to complete the disclosure in a timely manner was a mere oversight based on an inadvertent calendaring error and competing demands in other cases. Bard has satisfied its burden to show that Plaintiff failed to timely disclose information under the Federal Rules an in accordance with the parties' stipulation, and Plaintiff has failed to establish that his untimely and incomplete designation of Dr. LaDisa was substantially justified and harmless.

Plaintiff argues that any delay in the disclosure of Dr. LaDisa was harmless because Bard has had the Lampton Report in its possession since July 2020 in connection with the *Lampton* case and has known since November 2020 that Plaintiff intended to utilize Dr. LaDisa's opinions regarding Bard's Meridian IVC filter and its "thrombotic potential" as a result of filter design in this case. (*See* Lampton Report [#48-1], at 9–10.) According to Plaintiff, with this knowledge, Bard could have easily deposed Dr. LaDisa on his opinions and conclusions provided in that report within the time frame stipulated by the parties. Moreover, Bard already deposed Dr. LaDisa in conjunction with the *Lampton* case. In essence, Plaintiff argues that there is nothing specific to Plaintiff's case that would require a separate expert report by Dr. LaDisa as to Plaintiff and that Dr. LaDisa would only provide general testimony on the Meridian IVC filter and its potential to cause thrombosis if called to testify at trial.

Plaintiff's arguments implicate Bard's other objection to LaDisa's report—that it is generic expert testimony that should have been disclosed in the MDL and is not appropriate for

the case-specific stage of this litigation in this Court. The Court agrees with Bard that Plaintiff cannot both argue that Dr. LaDisa's testimony is generic and at the same time take the position that Dr. LaDisa is a case-specific expert that did not need to be disclosed in the MDL.

Plaintiff contends that Dr. LaDisa's general testimony on Meridian filters and thrombogenic injuries should be permitted at this late stage in the litigation because there was no expert designated in the MDL to testify on whether and how a Meridian filter causes thrombosis by its design. But the record before the Court belies this assertion. Bard counters that the Meridian filters were worked up during the MDL, and there were numerous depositions of experts in the MDL who rendered opinions on the Meridian filter and deep-vein thrombosis, such as Drs. Thomas Kinney, Anne Roberts, and Sanjeeva Kalva. (*See* Pl. Expert Desig. [#30-1], at 21; Kinney/Roberts/Kalva Report [#30-1], at 475 (addressing deep vein thrombosis), at 516 (addressing Meridian filter system).)

The record reflects that all general fact and expert discovery was long ago completed in the MDL and that this Court need not be concerned with general expert discovery. (Transfer Order [#3], at 31–32.) The parties further agreed to proceed with case-specific discovery and the designation and retention of case-specific experts only. (Rule 26 Report [#16], at 2–3.) On this record, the Court declines to permit Plaintiff to belatedly designate an expert and rely on a report prepared for another plaintiff in another Bard case, without the disclosure of a case-specific report reflecting a review of Plaintiff's specific medical history and injuries. The Court will therefore grant Bard's motion to strike Dr. LaDisa's expert designation.

**III. Defendants' Motion to Strike Dr. Feldstein [#45]**

Bard's renewed motion to strike the opinions of Dr. Feldstein does not ask the Court to strike all of Dr. Feldstein's opinions, but only those it views as generic opinions, as opposed to

case-specific opinions regarding Plaintiff's particular claims and injuries. Bard argues that the timely designation of Dr. LaDisa was a necessary component of the parties' joint stipulation that resolved its original motion on Dr. Feldstein. Bard therefore renews and incorporates the entirety of its original motion to strike in its renewed motion. (*See* Mot. to Strike [#30].)

Plaintiff designated Dr. Feldstein, a board-certified interventional radiologist, as a case-specific expert to opine on whether the Meridian filter was a contributing cause of Plaintiff's injuries. (Expert Desig. [#30-1]; Feldstein Report [#31-2].) After reviewing Plaintiff's pertinent surgical and medical history, Dr. Feldstein reached the following conclusions based on his training and experience with IVC filters and his treatment of patients with deep vein thrombosis and pulmonary embolism: (1) the Meridian filter has a significantly higher risk of causing adverse events like migration, caval perforation and filter fracture (just like its predecessor filters); (2) Bard failed to adequately warn of the nature and extent of the risks of the Meridian filter at the time Plaintiff had the filter implanted; (3) if Dr. Feldstein had been adequately warned about the nature and extent of the increased risk of adverse events associated with the Meridian filter and the lack of any clinical testing to supports its safety and efficacy, he would not have used the filter on Plaintiff or any other patient and no reasonable physician would have done so; (4) the Meridian filter was more dangerous than he or any other physician who places IVC filters would anticipate; (5) Plaintiff did not have any contraindication in placing the Meridian filter, and the perforation of the Meridian filter through Plaintiff's IVC was caused by the small diameter nitinol wire used and its interaction with the caval wall; (6) the Meridian filter was a contributing cause of the severe thrombotic episode experienced by Plaintiff in August 2016; and (7) Plaintiff will require recurrent CT scans to reevaluate filter leg penetration

progression and will need to remain on lifelong anti-coagulation to treat his condition. (Feldstein Report [#31-2], at 10–12.)

Bard's motion to strike asserts several arguments. First, Bard argues that Dr. Feldstein's report violates the law of the case doctrine because it impermissibly offers opinions excluded in the MDL in previous *Daubert* orders. Second, Bard argues that Dr. Feldstein's generic opinions should be excluded because all generic expert discovery was completed in the MDL. And third, Bard contends that Dr. Feldstein impermissibly parrots the expert opinions of Dr. LaDisa.

For the same reasons the Court has decided to strike the expert designation of Dr. LaDisa, the Court will also prohibit Dr. Feldstein from circumventing this ruling by incorporating all of Dr. LaDisa's opinions into his report. Although Plaintiff is correct that an expert may generally cite the conclusions of others in his field in offering his opinions, an expert may not parrot another expert's opinions and offer them as his own. *See Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (an expert may not "simply parrot impermissible hearsay evidence, thereby allowing a party to circumvent the rules against hearsay"); *Dura Automotive Systems of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613–14 (7th Cir. 2002) (an expert may not simply parrot the work actually done by another expert, who is not offered for testimony and cross-examination). Dr. Feldstein's expert report states that he has read the Lampton Report and "incorporates Dr. LaDisa's review of the Bard retrievable filter designs into [his] report and his analysis of the thrombogenic risk of the Meridian filter." (Feldstein Report [#31-2], at 5.) Dr. Feldstein may not testify to that effect at trial. However, Dr. Feldstein may reference the opinions of other experts properly disclosed in the MDL at trial as sources that he considered in reaching his conclusions, although he may not parrot or adopt those opinions in full or introduce the reports themselves into evidence.

The Court will deny Bard's motion to strike as to the remaining challenges to Dr. Feldstein's expert report. The parties spent much of the Court's hearing arguing about whether the report attempts to advance general opinions that should have been disclosed in the MDL or simply provides these general opinions as essential factual foundation for case-specific opinions. The Court finds that such objections are better addressed at trial through a motion in limine or contemporaneous objection. The same can be said of Bard's arguments that Dr. Feldstein's opinions contain opinions already excluded in the MDL in previous *Daubert* orders. For example, the MDL *Daubert* order excluding certain opinions of Dr. Hurst was based at least in part on Dr. Hurst's lack of knowledge about Bard's internal testing and developing practices as to IVC filters. (*See Daubert* Order [#31-3].) Dr. Feldstein's knowledge may differ from Dr. Hurst's. Dr. Feldstein will have to lay the proper foundation for any testimony he offers at trial, demonstrating that he has sufficient training and experience to provide such testimony and used reliable methodologies in reaching his conclusions. Bard has not briefed the Court on these traditional *Daubert* issues, and nothing in this opinion prevents Bard from filing a motion in limine or from challenging specific opinions at trial if Dr. Feldstein's testimony attempts to go beyond his qualifications and experience or he attempts to parrot any other expert in this case.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike Expert Designation of John F. LaDisa, Jr., Ph.D. [#44] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Renewed Motion to Strike the Generic Opinions of David C. Feldstein, M.D.'s Report and Testimony [#45] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED.**

SIGNED this 25th day of August, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE